WALTER B. FOSTER, Respondent, *v.* JOHN C. POTTER, IMPLEADED, &C., Appellant.

1. *Attachment—Corporations—Stocks.*—Shares of stock in an incorporated company cannot be levied on by an attachment. The statute of this State has not changed the common law rule in such cases.
2. *Executions—Corporations—Stocks.*—Under the statute relating to executions—R. C. 1855, p. 742, §§ 23, 24—shares of stock in an incorporated company belonging to the defendant in the execution may be seized and sold by the sheriff in the manner provided in the act.

37  525
96  688
32a 226
37  525
51a  11
37  525
113   16
37  525
122  637
60a 305
37  525
132  670
37  525
95a 1184

3. *Corporations—Stocks—Mortgage—Execution.*—The equity of redemption of a judgment debtor in shares of stock may be levied upon and sold under execution, and the purchaser will succeed to all the rights of the debtor.

*Appeal from St. Louis Court of Common Pleas.*

*Knox & Smith,* for appellant.

The appellant insists that the well recognized principles of the common law, that the interest of the mortgagor in goods and chattels mortgaged by him cannot be seized under a writ of attachment, or sold under execution, are not at all applicable to the case of stocks or shares in incorporated companies; such shares and stocks could not, at common law, be sold under execution.

The statutes of Missouri expressly authorize the seizure, under writs of attachment and execution, of choses in action, and the sale of " the rights and shares" of the debtor in the stock of corporations, &c.—R. C. 1855, p. 245, § 22, subd. 4; p. 247, § 28; p. 244, § 19; p. 742, § 24; p. 740, § 17; p. 741, § 18; p. 748, § 55.

By reference to the above provisions of the statutes, it will be seen that " rights and shares in the stock of incorporated companies" are subject to sale under execution; the manner of the levy and sale is distinctly provided for. After a sale, the purchaser is substituted for the debtor in all "rights and shares" the debtor may have in incorporated companies.

Even at common law, shares in the stock of a corporation were not regarded as other personal property, for the reason that such shares were intangible, and the officer could not actually seize them, or take them into his possession—5 Ed. Ang. & A. Corp. §§ 589, 590; 16 Mass. 318, 402.

*Grover,* for respondent.

I. It is insisted that by the execution of the deed of trust by McDowell to Foster, and the transfer on the books of the Pacific Insurance Company, the legal ownership of and title to the one hundred shares of stock passed from McDowell to Foster, leaving to McDowell a mere equity of redemption.

II. This equity of redemption was not subject to seizure or sale under an attachment or execution at law, and Potter acquired no right or interest in said stocks by virtue of the sheriff's sale and deed, under which he claims title.

III. At the time of issuing the last execution in favor of Lyon et al. against McDowell, and of the garnishment of Foster under said execution, and of the commencement of the suit by Lyon and others to compel the appropriation of the funds in the hands of Foster to the satisfaction of their judgment and execution against McDowell, no steps had been taken by Potter to enforce any supposed right which he had acquired under the sheriff's sale of said stocks.

IV. Until the sale of stocks by Foster on the 31st December, 1862, the interest of McDowell therein was purely equitable. By that sale all his interest in the stocks became divested, and the deed to Foster out-dating all attachments and executions, the sale by him conveyed a good title to the purchaser, unaffected by any of the attachments, judgments, or executions, through which Potter claimed to have derived title.

V. If the balance in Foster's hands is to be treated as an equitable fund, then Lyon and his co-plaintiffs in said judgment have secured by the commencement of their suit on the 20th March, 1863, their right in equity to have the fund appropriated to the satisfaction of their judgment and execution. (Sexton v. Marks, 16 Mo. 156; Yeldell v. Stemmons, 15 Mo. 443; Boyce v. Smith, 16 Mo. 317.)

HOLMES, Judge, delivered the opinion of the court.

This is a petition in the nature of a bill in equity to compel the parties defendant to interplead and establish their rights to a fund held by the plaintiff, and which he is ready to pay over to the party entitled to it. It appears that the firm of J. & W. McDowell, owners of certain shares of stock in the Pacific Insurance Company (of which John McDowell afterwards became sole owner), gave to the plaintiff, as trustee for the benefit of the corporation, a deed of trust in the

nature of a mortgage upon this stock, to secure the payment of certain notes held by the company. The deed was duly executed and recorded, and the transfer was entered on the books of the company, and signed by the grantors. Afterwards, the defendant Potter caused an attachment to be levied upon these shares of stock as the property of McDowell, and other attachments followed. The manner of the levy does not appear; but judgments were obtained in the attachment suits, and executions were issued thereon, under which this stock was levied upon and sold by the sheriff, in pursuance of the act concerning executions, as the property of McDowell, the defendant therein, Potter becoming the purchaser; and an instrument in writing was executed and delivered to him by the sheriff, as provided by the statute, purporting to convey all the interest of McDowell in these shares of stock. Subsequently to these proceedings, and when the notes became due, there was a sale by the trustee under the deed of trust, which realized a balance, over and above the debt secured, amounting to $1,644.46, which sum remained in the hands of the trustee. Some time after this, the trustee (the plaintiff here) was garnished as the debtor of McDowell, under an execution issued upon a judgment in favor of John Lyon and others against him; and while proceedings in the matter of the garnishment were still pending, this suit was commenced against all the parties concerned. The court below ordered the fund to be paid to John Lyon and others, and Potter was decreed to pay the costs of the suit. Potter appeals to this court. The court below refused to instruct the jury for the defendant Potter, to the effect, that the levy of the attachment (in the manner provided in the act concerning executions) created a lien upon the balance of the proceeds of the trustee's sale after payment of the notes secured, and that the levy and sale to Potter, under the executions issued in the attachment suits, gave him a good title to the fund remaining in the hands of the trustee; and further, that the equity of redemption in the shares of stock was subject to levy and sale in the same manner as the shares

themselves would have been, if they had been standing in the name of the defendant without any encumbrance thereon.

The statute subjects shares of stock in incorporated companies to levy and sale under execution, and prescribes the manner in which the thing may be done; but there are no such provisions in the act concerning attachments. At common law, such property could not be the subject of attachment or execution. This principle has been recognized by this court, and applied to a levy under execution upon an equity of redemption in movable personal chattels, where the mortgagor retained nothing more than a permissive possession, determinable at the will of the mortgagee, or upon an equitable interest in personal property assigned; and it has been held that such mere equitable interests could not be reached by process of law, nor be bound by execution, and that no title or interest in the chattels could pass to the purchaser under such levy and sale, even where the chattels were actually seized by the officer and delivered to the purchaser—King v. Bailey, 8 Mo. 332; Yeldell v. Stemmons, 15 Mo. 443; Boyce v. Smith, 16 Mo. 317. The defendant in the execution having no property in the thing, but a bare possession only, no interest could pass to the purchaser; and a mere right of redemption could not be actually seized. An attachment creates a lien upon property that can be attached and seized, or garnished; and a sale under execution, in such case, will be effectual to pass the property levied on, where such lien exists. It is not made to appear in what manner this attachment was undertaken to be levied on these shares of stock. The statute provisions, authorizing a levy of an execution, did not therefore authorize the levy of an attachment also. In general, stock owned by an individual in a corporation cannot be subjected to the payment of his debts by the process of attachment, nor by garnishee process, served on the corporation. Such property is neither a specific chattel, nor a debt, but a mere chose in action. A certificate of stock is merely an evidence of an interest or property owned in the corporation, but not of a debt due as a liquidated money de-

mand—Planters' Bank v. Leavens, 4 Ala. 753 ; Titcomb v. Union Mar. Fire Ins. Co., 8 Mass. 326. It does not appear that any certificate was actually seized. The property interest of the shareholder is an intangible and invisible thing, and cannot be actually seized by the officer. There can be no change of possession ; and the sale of such interests under execution or attachment was a mode of transfer unknown to the common law—Ang. Corp, § 588. The attachment act provides no method by which a levy can be made. It is clear, therefore, no levy of this attachment could have been made that would be valid and effectual as such.

The statutes of some States make special provision for the levy of an attachment upon such shares of stock. Our statute authorizes a levy upon books, accounts, notes, bonds, certificates of deposit, evidences of debt, and real and personal property ; and provides that when such things are to be attached, the officer shall take the same and keep them in his custody, if accessible ; and if not accessible, he may summon the person in whose possession they are, if in their nature seizable at all, as a garnishee. Neither shares nor certificates of stock in a corporation come under any one of these specifications otherwise than as chattels, or personal property. A certificate, as a chose in action and a chattel, might be seized, but stock, as personal property, could not be seized. It would seem to be very clear, that this kind of property is by its very nature wholly inaccessible to actual seizure by an officer. He could not take it into his custody. Nor can the corporation be said to have possession of it, as an article of property belonging to the defendant, in such manner that the corporation could be summoned as a garnishee. A garnishee may discharge himself by paying the debt into court, or delivering up articles of property in his possession as a garnishee, to the officer, to be disposed of under the order of the court. Nothing of this kind could be done here. We must conclude that the statute has not changed the common law rule in relation to the levy of an attachment upon shares of stock.

Foster v. Potter.

But the act concerning executions does provide a specific mode in which shares of stock in incorporated companies may be levied upon and sold under execution; and an execution upon a general judgment in an attachment suit is to. be a common law *fi. fa.*, and may be levied upon all the property of the defendant (subject to execution), whether attached or not—R. C. 1855, p. 256, § 61. It would appear that these shares were levied upon under executions issued upon general judgments, and sold and conveyed to the defendant Potter, in pursuance of the statute. If the defendant had been the absolute owner of the shares at the time of the levy, there could have been no doubt that the purchaser would acquire a good title by his purchase at the sheriff's sale. The statute provides, that when an execution is issued against a person, " being the owner of any shares or stock " in any corporation, it shall be the duty of the secretary, or other officer, to furnish to the levying officer a certificate of the number of shares held by the defendant, "with the encumbrance thereon" (§ 23); that the levy shall be made by leaving a copy of the writ with the secretary or other officer, with a certificate attested by the officer making the levy, that he levies and takes such shares to satisfy his execution (§ 24); and that when such shares are sold, the officer shall execute and deliver to the purchaser an instrument in writing (a bill of sale) conveying the same, and leave with the secretary a copy of his execution and of his return thereon, and thereupon the purchaser is to become entitled to the dividends and stocks and all the privileges in the corporation which the debtor himself had (55). It is also provided that such shares may be claimed, when levied upon, by any other person claiming an interest or title to the same, as in other like cases. Here is an effectual mode of levy, sale and transfer of all the interest of the debtor defendant, without an actual seizure, or anything like a delivery of the property *in specie*. The purchaser is put into the place of the debtor. The prior rights of the mortgagee are not necessarily interfered with. He may still proceed to sell under his mortgage,

or he may claim the property before the sheriff, or he may assert his rights in any other way known to the law. His conveyance upon a sale under his power may be effectual to pass the whole property in the stock, notwithstanding the sale under execution. The purchaser takes the property subject to the deed of trust. It does not appear that the notes had become due before the levy and sale under the executions. The deed itself provides that the trustee may sell, after the notes become due, whenever the holders of the notes shall require payment. Under such a deed, the absolute ownership does not vest in the trustee until a forfeiture, or even until an actual sale shall pass the title and interest in the property to the purchaser. He has a conditional legal title, with a power to sell and pass the title or absolute ownership to the purchaser. He can no more have an actual possession, or make a seizure or delivery of possession of the specific property, than the sheriff. Whatever possession or control the mortgagor could exercise over such property still remained with him as before, and was to continue until the trustee should be required to sell. He has thus an equity of redemption, with the possession and control of the property, according to its nature, for a definite period of time. In short, he remained the owner of the stock, subject only to the encumbrance. This encumbrance was noted on the books of the corporation in such manner that the secretary could furnish the levying officer with the certificate required by the statute. The amount of the defendant's interest could thereby be definitely ascertained and rendered certain. The words of the act are not necessarily confined to such claims as the corporation itself may have on the stock for unpaid assessments or otherwise; they are broad enough to include any and all encumbrances.

The decisions heretofore made, as above, related to movable articles of personal property, which may admit of seizure, change of possession, and actual delivery : they contemplate a case where the mortgagor has no right to retain possession of the property for any definite period. In King v. Bai-

ley it was said that the bare possession of a chattel by the mortgagor with the permission of the mortgagee, and determinable at his will, could not be the subject of sale under execution; that such bare possession gave no such interest in the property as could be levied on; but that it was not intended to convey the idea that a certain and determined interest in chattels, accompanied with possession, however limited, could not be sold under execution. The same intimation was repeated in the subsequent cases. The property consisted of slaves, lumber, and the like. It did not appear that the mortgagor had a right of possession for any definite period; nor did the property come under the same provisions of the statute as these shares of stock. The same distinction is clearly made in the authorities therein referred to—Hendricks v. Robinson, 2 Johns. Ch. 283; Bailey v. Barton, 8 Wend. 345. The former case concerned an indeterminate equitable interest in the surplus which might remain in the hands of the assignees after the purposes of the assignment were answered. In both cases it was expressly declared that the principle did not apply where the mortgagor had a right of possession for some definite period; but that where there was an equity of redemption, with such right of possession for a definite period, before the property could become forfeited and liable to be taken and sold by the mortgagee, the mortgagor has an interest which may be levied on and sold under execution, and that the purchaser would take the property subject to the encumbrances—Mattison v. Bancus, 1 Comst. 295. These cases related only to such articles of personal property as may the subject of actual seizure and change of possession, and they proceed upon the idea that indefinite and uncertain interests are not to be sacrificed under the legal process in this manner, when there is a more suitable remedy in equity; they have no direct bearing upon a case of this kind.

In those States where the statutes authorize an attachment to be levied on shares of stock in corporations, under various provisions, it is held that a levy may be made upon the equi-

ty of redemption of the mortgagor in such shares, and a sale made subject to the mortgage, even when the mortgage is given to indemnify against uncertain liabilities other than for the payment of money—2 Hill, Mortg. ch. 48. The purchaser under the execution may pay off the the prior mortgage, and he will thereby become the absolute owner of the shares—Forbes v. Parker, 16 Pick. 462. The surplus arising from the sale of such equity of redemption under an execution is to be held by the officer and paid over to the next in order of priority—Denny v. Hamilton, 16 Mass. 402.

At the time of this levy and sale under execution we think the defendant had an equity of redemption, with a right of possession and control for a definite period, and such an ownership and property in this stock as could properly be levied on under the statute relating to executions, subject to the existing encumbrances; and that the sale and conveyance by the sheriff passed to the purchaser the property in these shares, subject only to the prior deed of trust. When the property was sold under the deed of trust for the payment of the notes secured, the surplus remaining over became subject in his hands to a trust for the benefit of the party next entitled thereto. And the purchaser under these executions having acquired the equity of redemption, by the bill of sale from the sheriff, became substituted thereby to the place and right of the mortgagor, and entitled in equity to receive that surplus in his stead. It follows, that at the date of this garnishment of Lyon and others, the trustee was not indebted to the defendant in the execution under which he was summoned as garnishee, but stood indebted, or at least accountable in equity, to the purchaser under the first execution.

This being a proceeding in equity, we see no difficulty in the way of a decree in favor of the defendant Potter, as the party in equity entitled to the funds.

The first instruction refused for the defendant was not entirely correct. The levy of the attachment was unauthorized and void, and gave no lien; but the levy and sale under the execution issued in the attachment suits did create a lien,

and give a good title to the purchaser, to the extent of the balance of the fund. The other instruction, though somewhat too general in its terms, might very well have been given, upon the evidence before the jury.

Judgment reversed, and cause remanded. Judge Wagner concurs; Judge Lovelace absent.