ROCK ISLAND PLOW COMPANY, Appellant, v. BREESE
& BREESE et al., Appellees.

J. L. ROBINSON, Appellant, v. THE SAME.

1. Assignment for Benefit of Creditors: PREFERENCES. An insolvent firm having determined to make a general assignment of its property for the benefit of its creditors, without preferences, employed an attorney to draw up a deed in accordance with that purpose, but before said deed was completed, and before the delivery thereof to the assignee, a creditor, learning of the purpose of the firm, caused an attachment to be levied upon the firm property; thereupon, the said debtors and their assignee, to obtain the release of the attached property, executed a mortgage thereon to the attaching creditor, *held*, that there being no evidence of collusion between said debtors and the attaching creditor in the levy of said attachment, nor of any intention on the part of the debtors to prefer any creditor when they determined to make an assignment, the said deed of assignment and mortgage were not parts of the same transaction, and, therefore, to be construed together as a general assignment with preferences.

2. ———: ———: ATTACHMENT: DEFECTIVE WRIT: AMENDMENT. Where a writ of attachment issued under the seal of the district court, by the clerk of that court, and upon a petition filed in said court, recited that the petition was filed in the circuit court, and directed the sheriff to make return to the circuit court, *held*, that such defects were amendable at any time upon objection being made thereto, and did not affect the validity of the levy.

3. ———: PRIOR LIENS: POWERS OF ASSIGNEE. The said attachment having been levied before the completion of the assignment, the assignee took the property under said deed subject to said lien, and it was competent for the assignors and assignee, for the purpose of getting the assigned property into the custody of the assignee, to execute a mortgage thereon to the attaching creditor.

*Appeal from Webster District Court.*—HON. S. M. WEAVER, Judge.

WEDNESDAY, OCTOBER 21, 1891.

ACTION in equity, in which the validity of a general assignment for the benefit of creditors, an attach-

ment levied upon certain personal property, and a chattel mortgage, are claimed to be void. There was a hearing upon the merits, and the plaintiffs' petitions were dismissed, and they appeal. The appeals in both cases will be determined in one opinion.—*Affirmed*.

*John Doud, Jr.*, and *R. M. Wright*, for appellant.

*Albert E. Clarke*, for appellees, A. Beach and Breese & Breese.

*A. N. Botsford* and *Healy & Healy*, for appellee, M. Healey.

ROTHROCK, J.—I. The defendant Breese & Breese was a copartnership composed of A. Breese and Cecil Breese. For some time prior to the twenty-fifth day of September, 1888, the said partnership had been engaged in the sale of agricultural implements. The firm was insolvent, and on said day the members thereof made a general assignment for the benefit of creditors to the defendant, A. Beach. The defendant, M. Healy, was a creditor of the firm, and on the same day he caused a writ of attachment to be levied upon the partnership property. After the writ of attachment was levied the partnership executed a chattel mortgage to Healy upon a part of the property, and by agreement the sheriff, who was in possession under the writ of attachment, released the property, and the assignee took possession, with the understanding that he took the property subject to the mortgage to Healy. The plaintiffs are creditors of the partnership of Breese & Breese, and recovered judgments (one of which was in an attachment suit) on their claims some time after the date of the assignment, attachment and chattel mortgage. They attempted to levy executions on the mortgaged property. The levy was resisted by Healy, and he

1. ASSIGNMENT for benefit of creditors: preferences.

removed and sold the mortgaged property by virtue of
his mortgage.   These actions were commenced by the
plaintiffs, and they ask that the mortgage and assign--
ment be set aside and held for naught, and the property
and credits of the firm be applied in satisfaction of said
judgments.   The ground alleged for the relief sought
is that the mortgage and assignment together amount·
to a general assignment for the benefit of creditors,
with a preference to the defendant Healy, and are,.
therefore, void.

It is provided by section 2115 of the Code:   "No·
general assignment of property by an insolvent, or in
contemplation of insolvency, for the benefit of creditors,
shall be valid, unless it be made for the benefit of all
his creditors in proportion to the amount of their
respective claims."   It is conceded that the partnership
was insolvent, and that the assignment in question was·
contemplated by the members of the firm for several
days before it was made.   An attorney was consulted,
who commenced writing up an assignment on the
twenty-fourth day of September, 1888.   On the morn--
ing of the next day the defendant Beach consented to·
act as assignee, and the instrument was completed on
that day.   Now, if, as part of the same transaction,
and for the purpose of giving a preference to Healy,
the partnership executed the mortgage to Healy, the
assignment and mortgage would both be void, as being·
within the provision of the statute above cited.   This
question has so frequently been determined by this·
court that a reference to the cases is unnecessary.

The rights of the parties to these cases depend
somewhat on other facts necessary to be considered in
connection with the time of the execution of the mort-
gage and assignment.   In the first place, when the
members of the partnership determined to make an
assignment they had no intention to prefer any cred-
itor.   When the instrument was written and the·

writing completed it was an assignment for the benefit of all the creditors of the firm without any preference. There was no collusion between the members of the firm and Healy. They had no conference on the subject. Healy learned that the firm was making an assignment, and at once set himself about procuring an attachment. The attachment was delivered to the sheriff, who proceeded to the building where the goods were kept, and took possession by locking it up. There is some question made whether the acts of the sheriff amounted to a valid levy. But there is no doubt that under the evidence there was a lawful levy. This act was done before there was any attempt by the firm or the members thereof to turn over the possession of the property to the assignee. We have recited what we regard as the undisputed facts in the case. There are other facts upon which there is a dispute and a conflict of evidence, and it is necessary that we should determine just what the evidence establishes. We will do so without reviewing the testimony of the witnesses which has been elaborately discussed by counsel. A careful examination of this evidence in the light of the arguments of counsel has led us to the conclusion that the assignment was not completed until after the attachment was levied, but that it was in the possession of the attorney who drafted it, awaiting the signature of one of the members of the firm. It may be true that it was a valid instrument without the signature of both members of the partnership, but the signatures of both were thought to be necessary, and the parties acted in that belief, and there was no delivery of the assignment to the assignee as a completed instrument until some time after the attachment was served, and the property in the possession of the sheriff. When this was discovered by the members of the firm and by the assignee, a compromise was effected with Healy, by which he released the attachment, and

took the mortgage.   The acts of the members of the firm and of the assignee amounted to a concession that the attachment was a valid lien upon the property. As we have said, there was no collusion between Healy and the insolvent debtors.   They gave the mortgage because they believed it would be to the advantage of themselves and all the creditors to release the attachment.   The final signature to the assignment and the signature to the mortgage were made at the same time.

II.   It is claimed that the attachment was void because of certain defects in the writ.   It is doubtful if that question can be raised in these actions.   But suppose the defects complained of were upon the face of the paper when it was issued.   This did not render the levy void. It is provided by section 3021 of the Code that "this chapter [the chapter on attachment] shall be liberally construed, and the plaintiff, at any time when objection is made thereto, shall be permitted to amend any defect in the petition, affidavit, bond, writ or other proceeding, and no attachment shall be quashed, dismissed, or the property attached released, if the defect in any of the proceedings has or can be amended so as to show that a legal cause for the attachment existed at the time it was issued."   The defects complained of were such as could have been amended.   They consist in recitals in the writ that the petition was filed in the "circuit court," and an order to the sheriff to make return of his doings to the "circuit court."   The fact is, the petition was filed in the district court, and the writ was under the seal of that court, and attested by the clerk of the court.   The circuit court was abolished before that time.   These defects were such as were amendable at any time that any objection should be made thereto.   See *Murdough v. McPherrin*, 49 Iowa, 479, where it was held that, where a writ of attachment is issued under the seal of one

2. ——: ——: attachment: defective writ: amendment.

court while the action is pending in another, it is competent to amend the writ. And in *Atkins v. Womeldorf*, 53 Iowa, 150, it was held that, where the sum claimed by the plaintiff in the attachment proceeding was omitted from the writ, it was competent to amend the writ by inserting the proper sum therein. The defects in the writ in this case are of about the same consequence as the defects in the writs in the cited cases.

III. There is but one other question necessary to be considered. It is whether it was competent for the members of the partnership and Healy to preserve the lien acquired by Healy by executing and delivering the mortgage in question; in other words, did Healy, by taking the mortgage, divest himself of a lien on the property for his debt? If at the time the members of the partnership and their attorney commenced the work of preparing the assignment there had been an attachment or mortgage upon the property, obtained in good faith by a creditor, the rights of such creditor could not be affected by the assignment. The assignee would have taken the property subject to the lien. This is precisely what was done in this case. It is true, the attachment was levied upon the property on the same day that the assignment was completed, but in point of time it preceded the assignment. It was surely the right of the members of the partnership and the assignee to determine whether it was better to give the mortgage and take possession of the property, or to allow the sheriff to retain the custody under the attachment. There is nothing in the case which tends to show that such a change of the lien was any prejudice to any other creditor.

*3. ——: prior lien: powers of assignee.*

Finding, as we do, that the attachment was levied before the assignment was completed, and that it was competent for the parties to substitute the mortgage

lien for the lien by attachment, it is an end of the case.   The decree of the district court will be AFFIRMED.

ROBINSON, J., took no part in the decision of this case.