## No. 8354.

### HOME STATE BANK *v.* HUNKEY.

1. FRAUDULENT CONVEYANCES—*Conveyances Between Relatives,* are to be carefully scrutinized, but are not attended by any presumption of fraud.

2. NOTICE—*To Agent—When Principal Affected By.* Not where in the transaction in question the agent is acting for himself.

3. DEED—*Acceptance—Presumed,* where the deed is executed in consummation of a previous contract, even though the grantee has no knowledge thereof at the time of its execution.

4. *Unrecorded,* is postponed to one of subsequent date, upon due consideration, without notice, and first recorded.

*Error to Montrose District Court, Hon. Thomas J. Black, Judge.*

Messrs. CATLIN & BLAKE, for plaintiff in error.

Messrs. SHERMAN & SHERMAN and Mr. CHARLES H. REDMOND, for defendant in error.

Mr. Justice Scott delivered the opinion of the court.

IN 1908, Jacob F. Hunkey purchased a farm in Montrose county from one Main. The purchase price was

$6,363.00, and which was made in cash, excepting a mortgage to Main in the sum of $2,675.00. In order to make this cash payment Hunkey borrowed from his sister, Helen E. Hunkey, defendant in error, then living at Atchison, Kansas, the sum of $2,400, for which he executed and delivered to her at the time his promissory note bearing interest at six per cent. per annum. He made two interest payments on the note of $150 and $140, respectively. Failing to make payment of the principal and interest on this note, Hunkey, at or about the time of its maturity wrote a letter to another sister, proposing to give to Helen a new note for the principal and accrued interest, payable two years from date, to bear interest at eight per cent. per annum, and to be secured by mortgage on his farm, subject to the Main mortgage, and asked that Helen send him the amount due. This she did without writing a letter, but upon a slip of paper and gave the amount due as $2,860.00.

Upon receiving this statement of amount, and on the 30th day of August, 1913, Hunkey executed the note and mortgage as proposed, and on the same day caused the mortgage to be recorded, and afterward forwarded to the defendant in error, who accepted it.

On the 29th day of March, 1913, the said Jacob F. Hunkey executed and delivered to the plaintiff in error, The Home State Bank of Montrose, his promissory note in the sum of $3,600.00, and to secure the same executed and delivered to the said bank a trust deed covering said premises, but with the agreement that said trust deed was not to be recorded. This trust deed was not recorded until October 1st, 1913.

The bank brought this suit in foreclosure claiming a prior and superior lien to that of the defendant Helen E. Hunkey; alleging that said defendant had knowledge of the bank's unrecorded trust deed at the time of the execution and delivery of the mortgage to her, and that Jacob F. Hunkey was acting in the capacity of agent for Helen E. Hunkey, and that the transaction between Helen E.

Hunkey and Jacob F. Hunkey was in fraud of the plaintiff's rights.

The court found the lien of Helen E. Hunkey to be prior and superior to that of the bank and rendered judgment of foreclosure and sale accordingly. The court made the following findings of fact and conclusions of law:

"*Prima facie,* the mortgage to the sister is valid, for consideration, in good faith, and without knowledge of the prior but unrecorded mortgage to the bank. In other words, by reason of the recording acts, a second mortgage, if first recorded, is in law given preference over a prior unrecorded mortgage; the law raises the presumption that the second, if first recorded, was given in good faith, for valuable consideration and without notice of prior equities.

Here the State Bank to overcome the legal presumption in favor of the second mortgage, asserts that it was given with knowledge of the unrecorded mortgage to the bank, and is therefore fraudulent.

The burden of proving fraud rests upon the bank. To sustain the charge of fraud the bank says that the grantee of the second mortgage was the sister of the grantor, that she knew he was in debt, that he acted as her agent in the transaction and that she was therefore bound by any knowledge he possessed as to the existence of the first mortgage.

While the law scrutinizes carefully transactions between brother and sister, there is no conclusive presumption that such transactions are fraudulent. At most the law only requires of parties so situated proof that the transaction is what it purports to be, namely, for valuable consideration and without notice of the equities of others.

A brother has a right to prefer a sister just as he generally has the right to prefer other creditors. That the brother was in debt, that the sister knew it, and that to secure a debt to her he executed the second mortgage, standing alone, would be nothing more than a suspicious circumstance. Circumstances of suspicion are not enough to warrant the court in declaring a mortgage fraudulent.

There must be satisfactory proof. Taking the evidence as a whole it does not satisfactorily or at all establish fraud.

The undisputed evidence is that the sister advanced the brother the money, to secure, which the mortgage was given. That this is so, was conceded by counsel for the bank in the argument. Unless in the transaction involved, the brother must be regarded as having acted as the agent of the sister, and for that reason, the sister held to have knowledge of all the brother knew concerning the first mortgage, the action of the bank must fail.

In the mind of the court the facts do not justify the theory of agency. In the beginning the brother wrote to another sister asking that the defendant sister figure up what the amount of the indebtedness with interest was, and stating that he would secure it by mortgage. The defendant sister did so. The brother was acting for himself in the proposition, as well as in the preparation of the mortgage; the sister was likewise acting for herself. It was nothing more than a transaction between two principals. No third person was involved. The sister by sending a statement of the amount of the indebtedness, by the strongest implication, agreed to accept the mortgage. Under such circumstances, she having knowledge of the intended execution of the mortgage and having agreed to accept it, delivery to the recorder was delivery to her."

This correctly states the law and is approved. There is no contention as to the correctness of the findings of fact.

It will be noted that Jacob F. Hunkey had proposed the execution of the mortgage, and that in compliance with his request Helen E. Hunkey had forwarded to him the amount to be secured thereby, and that the note and mortgage, for the exact amount, and for the time it was to run, and at the rate of interest so proposed, were executed; the mortgage was recorded, and both note and mortgage forwarded to and received and accepted by her before the bank's deed was recorded, and before she had knowledge of such trust deed,

The cases of *Reynolds v. Black*, 91 Ia. 1, 58 N. W. 922, and *In Re Assignment of Guyer*, 69 Ia. 585, 29 N. W. 826, are in point and are authority for the judgment of the court. *Knox v. Clark*, 15 Colo. App. 356, 62 Pac. 334, well sustains the principle. Upon the question of delivery and acceptance it was there said:

"The question, what constitutes an acceptance by the grantee, is not in all cases free from difficulty. It cannot arise where the execution and delivery of the deed is the conclusion of a transaction conducted by the immediate parties. Nor is it involved where the deed is executed in performance of the grantor's contract with the grantee to convey the land to the latter. In such case, the deed is the consummation of the contract, and the contract contains the assent of the grantee to its execution, so that it is immaterial whether he had personal knowledge of the deed at the time it was made or not."

The rule as to agency properly to be applied to the facts in this case is stated to be:

"The rule that notice to an agent is notice to the principal, being based upon the presumption that the agent will transmit his knowledge to his principal, the rule fails when the circumstances are such as to raise a clear presumption that the agent will not perform this duty, and accordingly where the agent is engaged in a transaction in which he is interested adversely to his principal, or is engaged in a scheme to defraud the latter, the principal will not be charged with the knowledge of the agent acquired therein." 31 Cyc. 1595, and authorities cited.

The judgment is affirmed.

White, C. J., and Garrigues, J., concur.